## CITY NAT. BANK OF WICHITA FALLS et al. v. WICHITA ROYALTY CO. et al.
### No. 358.

District Court, N. D. Texas, Wichita Falls Division.

March 30, 1937.

Kilgore & Rogers, of Wichita Falls, Tex., for the motions.

Bullington, Humphrey & King, T. R. Boone, and Weeks & Morrow, all of Wichita Falls, Tex., opposed.

ATWELL, District Judge.

On October 11, 1930, the City National Bank of Wichita Falls filed a suit against the Wichita Royalty Company and E. E. Scannell alleging that the company was a trust operating under a declaration made by R. R. Robertson on June 1, 1920, and that Scannell was the sole trustee; that the trust was engaged in the business of selling lands, oil properties, mineral rights, and royalties; that it was the owner of one-half of the capital stock of the Texas Investment Company, a Texas corporation; that on the 26th of June, 1930, Scannell, as such trustee, executed and delivered to the plaintiff a promissory note in the sum of $22,000, due 60 days after date, and that a deed of trust had theretofore been executed, in 1925, to J. T. Harrell as trustee, upon certain realty, for the securing of the notes which preceded the last $22,000 transaction; that the company was also the maker and indorser upon an obligation of the Texas Investment Company for $23,500 and one for $5,000 and another for $5,000; that the trust and the trustee were without sufficient assets to pay the indebtedness and were insolvent and that its producing oil properties were being depleted. A receiver was sought, together with judgment and foreclosure.

That suit wended its way through the state trial court, a court of civil appeals, and the Supreme Court of the state, and was finally back in the state trial court for further proceedings. On June 18, 1936, the company and its trustee filed its third amended original answer and cross-action and impleaded certain other parties theretofore unknown to the record. It sought $200,000, and this pleading covered approximately fifty-five pages. It sought to void a transfer of the assets of the City National Bank of Wichita Falls, the original plain-

tiff, to the City National Bank in Wichita Falls, alleging that it was made while the transferer was insolvent and in voluntary liquidation. It sought an accounting between all of the parties in both the old and the new institution and was really a bill to wind up the affairs of the bank. It sought such remedies against the liquidating agent of the old institution and declared for a right to share in the funds and assets that that agent was administering. Likewise, it sought a ratable distribution, among the creditors of the old institution, of the assets, which were in the hands of the liquidating agent, who had theretofore been appointed under and by force of the laws of the United States.

One of the subdivisions of the prayer is, "that the old bank be declared to have been insolvent when payments were made by it to the several parties hereto, and that its assets be decreed to be a trust fund for the benefit of all creditors, and that such creditors, parties hereto, who have been preferred be required to restore the amounts received to the trust fund. That all creditors of the old bank be given notice of the pendency of this suit and permitted to intervene herein and set up their rights with respect to such trust fund, and that such fund be ratably distributed between the creditors of the old bank existing at its insolvency." The suit as thus framed was against the City National Bank of Wichita Falls, its successor, the City National Bank in Wichita Falls, J. T. Harrell, as trustee for the City National Bank of Wichita Falls, W. H. Peckham, administrator of the estate of G. W. Peckham, William Peckham, and George Peckham, minor sons of G. W. Peckham, Robert W. Peckham, Mrs. Hazel D. Peckham, the Texas Investment Company, E. A. Deaton, liquidating agent of the City National Bank of Wichita Falls, L. H. Cullum, J. T. Harrell, Leslie Humphrey, Jack Jeffus, Oral Jones, Frank Kell, Joe Kell, J. J. Perkins, C. W. Snider, and F. P. Timberlake, each stockholders and directors of the City National Bank of Wichita Falls. In paragraph 39 of the rather unusual pleading is this statement: "And they now sue for themselves and all other creditors similarly situated, and invoke the general equity power of the court to assert the liens upon all such properties for an accounting, for a restoration of such trust funds as may have been dissipated and/or paid to creditors, for their ratable interest therein, for the determination of

the amount of personal liability of the old directors and for judgment thereon, all with the view and to the end that cross complainant be accorded an equal participation in the assets of the old bank as every other creditor has or may obtain."

It is also alleged that in March, 1933, when, by presidential proclamation, the bank was closed, that it never reopened, but was superseded by the City National Bank in Wichita Falls, which succeeded to the assets and liabilities of the old institution and promised to settle such liabilities.

On July 1, 1936, a petition for removal was filed by the old as well as the new City National Bank and by all of the other defendants in the cross-action.

Motion to remand is now urged with much earnestness.

■ It is too late now to defend the right of a plaintiff who begins action in the state court to remove to the national court if and when national questions arise. The courts have joined in a procession of opinions supporting that right. The few cases that were to the contrary at the beginning are decidedly in the minority. Pierce v. Desmond (D.C.) 11 F.(2d) 327; San Antonio Suburban Irrigated Farms v. Shandy (D.C.) 29 F.(2d) 579; Bankers Securities Corporation v. Insurance, Equities Corporation (C.C.A.) 85 F.(2d) 856; Waco v. U. S. Fidelity & Guaranty Co., 293 U.S. 140, 141, 55 S.Ct. 6, 79 L.Ed. 244; Mason City & Ft. D. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct 321, 51 L.Ed 629; Zumbrunn v. Schwartz (D.C.) 17 F.(2d) 609; American Fruit Growers v. La Roche (D.C.) 39 F.(2d) 243; Guarantee Co. of N. D. v. Hanway (C.C.A.) 104 F. 369; Wyman v. Wallace, 201 U.S. 230, 26 S.Ct 495, 50 L. Ed. 738.

■ That the old bank had begun litigation in the state courts did not prevent it from removing the cross-complaint, as soon as it was presented, to the national court. Since its original suit was based upon an alleged indebtedness by the cross-acting complainant, in which cross-action all of the dealings between it and many others, with the old bank, were pleaded, there was no impropriety in bringing the entire suit to the national court.

The petition for removal, somewhat epitomized and shortened, claimed that the remedies sought in the cross-action classed the case as one arising out of the laws of the United States. There are at least two

statutes which seem to cover, almost entirely, the remedies sought. One is title 12 of section 91, U.S.C.A., which relates to transfers of notes and other evidences of debt owing to any national banking association or of deposits to its credit, and specifies that such shall be utterly null and void under the circumstances therein portrayed. That is the section which denies the right to have attachments or injunctions or executions against a national banking association. Title 12 of section 181, U.S.C.A., deals with the right of an association to go into liquidation and to designate a liquidating agent who shall conduct such procedure in accordance with the law and under the supervision of the board of directors. Then there is title 28 of section 41, paragraph 16, U.S.C.A., which gives the national court jurisdiction of "cases for winding up the affairs of any such bank," meaning national bank.

This court said in Citizens' National Bank in Waxahachie v. Citizens National Bank of Waxahachie, 9 F.Supp. 513, 515, that "such suits as are brought by receivers of banks, by trustees, or by others against banks, which would deplete the fund that might be used for the liquidation of its affairs, suits for assessment, are all, plainly, within that phrase of the statute which allows a case for 'winding up the affairs of any such bank,' to be tried in the national court," citing a long list of authorities.

Counsel present the recent case of Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. ——, decided November 9, 1936, and Connolly v. First Nat. Bank (C.C.A.) 86 F.(2d) 683, as recent authorities, which delve deeply into the meaning of the phrase "arising under the constitution and laws of the United States." I have been unable to find anything in either of those cases which denies the national court jurisdiction over a cause which comes under the statutes above mentioned. The Gully Case was a simple suit by a state tax collector to collect a debt. The Connolly Case was a mere demand for a money judgment. Claims may be established in causes such as those and presented for settlement. That is not the case here pleaded. Here the plaintiffs in the cross-action seek to take property, to undo liens, to reapportion, to, in short, perform all of the essential requisites of a winding up process. It would be impossible —and impossible is a big word—to grant

the relief to the complainants in the cross-action without literally taking away from the liquidating agent that which he holds, and without reapportioning to creditors of the old institution payments upon their obligations. Lawrence National Bank v. Rice (C.C.A.) 83 F.(2d) 642; Edwards v. Bay State Gas Co. (C.C.) 184 F. 979; Omaha Nat. Bank v. Federal Reserve Bank (C.C.A.) 45 F.(2d) 511.

It is the presence of a federal question which determines the jurisdiction. When such a question forms an ingredient in the original cause, it is removable, even though there are other questions of fact and law involved. New Orleans, M. & T. R. Co. v. Mississippi, 102 U.S. 135, 26 L. Ed. 96; Omaha Horse Railway Co. v. Cable Tramway Co. (C.C.) 32 F. 727, 729. See, also, Texas Pipe Line Co. v. Ware (C.C.A.) 15 F.(2d) 171.

The motions challenging jurisdiction and to remand may be overruled.