## SHEETS et al. v. SHAMROCK OIL & GAS CORPORATION.

### No. 9568.

Circuit Court of Appeals, Fifth Circuit.

Dec. 6, 1940.

Rehearing Denied Jan. 14, 1941.

Ben P. Monning and E. Byron Single-ton, both of Amarillo, Tex., for appellants.

W. M. Sutton, of Amarillo, Tex., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

We are met at the threshold of this case with a question of removal jurisdiction. It is whether or not a counterclaim set up by the defendant in a state court, filed by way of defense and for affirmative relief, is a suit which is removable by the plaintiff and cross-defendant under Section 28 of the Judicial Code.[1] The court below answered this question affirmatively, and overruled a motion to remand. From a final judgment on the merits in favor of the original plaintiff (appellee here), the defendants who set up the counterclaim have appealed to this court.

The appellee, a Delaware corporation, sued the appellants, citizens of Texas, in the district court of Potter County, Texas, for the sum of $5,390.42, alleged to be due the plaintiff upon an open account for the purchase price of goods sold by it to the defendants. At the instance of the defendants, upon a plea of privilege, the action was transferred to the district court of the county of their residence. Then the defendants filed their answer in the state court. It contained a general demurrer and a general denial, but no specific debit items were denied and no additional credit items were alleged; it sought to defeat the entire action on the ground that the contract sued upon was in violation of the anti-trust statutes of Texas, and therefore void. In addition, the defendants filed what they called a set-off and cross-action, whereby they demanded of the plaintiff damages in a sum in excess of three thousand dollars, exclusive of interest and costs. Defendants prayed that, on final hearing, the plaintiff take nothing by its suit against them, and that they have judgment against the said plaintiff on their cross-action.

The damages sought by the defendants against the plaintiff arose at a different time and out of the alleged breach of separate and distinct contracts from the indebtedness due the plaintiff. While the defendants prayed that damages in the sum of $5,000 be allowed as a set-off to any claim which the plaintiff might have against them, they denied the validity of any such claim, and finally prayed for a judgment against the plaintiff in the full sum of $7,200 and all costs of suit. We have, then, a case where the plaintiff elected to sue in a state court for more than three thousand dollars, and the defendants not only denied the existence of any such claim, but sought by cross-action to recover damages in the sum of $7,200; whereupon, the plaintiff and cross-defendant filed a petition to remove the whole suit to the federal court. The question presented depends entirely upon the proper construction of the applicable provision of the present removal statute.[2]

From 1875 to 1887, the right of removal on the ground of diversity of citizenship was given to plaintiffs as well as to defendants. At all other periods since the adoption of the Judiciary Act of 1789, 28 U.S.

---

[1] 28 U.S.C.A. § 71.

C.A. § 71 note, such right was limited to defendants, except under the act of 1867, which applied only to cases where there was the additional ground of prejudice and local influence.[3]  At the present time, only the defendant or defendants, being non-residents of the state in which the suit is brought, may remove the suit into the District Court of the United States. In no instance mentioned in said Section 28 is the right of removal expressly conferred upon a plaintiff or cross-defendant.

█ The removing party here was the plaintiff in the action filed in the state court, and did not become entitled to remove because a set-off or counterclaim was asserted against it by cross-action. The right to remove is given only to a defendant who has not voluntarily submitted himself to the jurisdiction of the state court, "not to an original plaintiff in a State court who, by resorting to that jurisdiction, has become liable under the State laws to a cross-action."[4]  The decision to this effect, just cited, was under the Judiciary Act of 1789, but the applicable provision thereof was not materially different from the present statute, the right of removal then and now being given only to the defendant.

In Waco Hardware Company v. Michigan Stove Co., 5 Cir., 91 F. 289, 290, wherein the plaintiff in the state court sued for less than the federal jurisdictional amount and was met with a counterclaim for a sum greater than such jurisdictional amount, this court refused to read "between the lines of the act" and extend to the plaintiff in a state court a right which, it said, the law clearly intended to give only to the defendant or defendants therein.  There are decisions to the contrary,[5] but both reason and the weight of authority seem to us to be against allowing the plaintiff to remove because he becomes a cross-defendant in a controversy between citizens of different states having the requisite jurisdictional amount.[6]

·The case of Wichita Royalty Company v. City National Bank[7] is cited by appellee to sustain removal.  It involved a federal question and not diversity of citizenship. The cross-bill brought in new parties, including the receiver of an insolvent national bank which had closed its doors since the original suit was filed; it might and probably should have been filed as an independent suit; it certainly should have been characterized as a supplemental cross-bill; but be that as it may, this cross-bill was construed by the district court to be "really a bill to wind up the affairs of the bank."[8]  The Circuit Court of Appeals concurred in this construction,[9] and the jurisdictional point was not mentioned by the Supreme Court in its opinion.

[3] Act of March 2, 1867, 14 Stat., ch. 196, p. 558, 28 U.S.C.A. § 71 note.

[4] West v. Aurora City, 1867, 6 Wall. 139, 141, 18 L.Ed. 819.

[5] Carson & Rand Lumber Co. v. Holtzclaw, C.C.Mo.1889, 39 F. 578; Walcott v. Watson, C.C.Nev.1891, 46 F. 529; Price & Hart v. T. J. Ellis & Co., C.C.Ark. 1904, 129 F. 482; Hagerla v. Mississippi River Power Co., D.C.Iowa 1912, 202 F. 771; Hansen v. Pacific Coast Asphalt Cement Co., D.C.Cal.1917, 243 F. 283, 284; Consolidated Textile Corporation v. Iserson, D.C.N.Y.1923, 294 F. 289; Pierce v. Desmond, D.C.Minn.1926, 11 F.2d 327; Zumbrunn v. Schwartz, D.C. Ind.1927, 17 F.2d 609; O'Neill Bros. v. Crowley, D.C.S.C.1938, 24 F.Supp. 705; San Antonio Suburban Irrigated Farms v. Shandy, D.C.Kans.1928, 29 F.2d 579; Bankers Securities Corporation v. Insurance Equities Corporation, 3 Cir.,1936, 85 F.2d 856, 108 A.L.R. 960; Chambers v. Skelly Oil Co., 10 Cir., 1937, 87 F.2d 853.

[6] West v. Aurora City, 1867, 6 Wall. 139, 18 L.Ed. 819; Waco Hardware Co. v. Michigan Stove Co., 5 Cir.,1899, 91 F. 289; McKown v. Kansas & Texas Coal Co., C.C.Ark.1901, 105 F. 657; Indian Mountain Jellico Coal Co. v. Asheville Ice & Coal Co., C.C.N.C.1905, 135 F. 837; Illinois Central Ry. Co. v. A. Waller & Co., C.C.Ky.1908, 164 F. 358; Glover Mach. Works v. Cooke Jellico Coal Co., D.C.Ky.1915, 222 F. 531; Mohawk Rubber Co. v. Terrell, D.C.Mo.1926, 13 F.2d 266.

[7] 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515; Id., 5 Cir., 95 F.2d 671; Id., 5 Cir., 97 F.2d 249; City Nat. Bank v. Wichita Royalty Co., D.C., 18 F.Supp. 609.

[8] City National Bank v. Wichita Royalty Co., D.C., 18 F.Supp. 609, 610.

[9] Upon the matter of winding up the affairs of the old bank, this court said (95 F.2d 671, 674): "The [United States] District Court has a special jurisdiction of such a case. 28 U.S.C.A. § 41(16); International Trust Co. v. Weeks, 203 U.S. 364, 27 S.Ct. 69, 51 L.Ed. 224. It has been held indeed that where no other relief is prayed a state court should not exercise jurisdiction. Birdsey v. Commercial National Bank, 143 Ga. 627, 85 S.E. 881."

■ Only defendants may remove, either on the ground of a federal question or by reason of diversity of citizenship. In cases of diversity the right is given only to non-resident defendants. In both cases all of the defendants must join in the petition to remove, except where there is a separable controversy wholly between citizens of different states. In all other respects the statutory provisions with reference to removal are substantially the same in cases involving federal questions as in those depending upon diversity of citizenship; and yet the principle which controlled the decision in West v. Aurora City, supra was not overruled by the decision in Wichita Royalty Co. v. City National Bank, supra, because of the distinguishing facts mentioned in the preceding paragraph.

Although directly in point, it is said that West v. Aurora City, supra, is an old case which has lost its value by changes in the statute. Exactly the reverse is true; it has gained in value as an authority by the course of legislation on the subject, because the pertinent provision at this time is the same as when that decision was rendered, and the intervening changes, expanding and then contracting the right of removal, emphasize the legislative intent to limit it to the defendant in the statute in force at the present time.

■ We have seen that the Aurora City case was decided in 1867, when only defendants were given the right to remove. By the act of 1875, supra, 28 U.S.C.A. § 71 note, the right to remove was extended to either party, and this act, which repealed the provision of the Judiciary Act of 1789 limiting the right of removal to defendants only, necessarily repealed the construction thereof which held that a plaintiff or cross-defendant was not entitled to remove under the act of 1789. The act of 1875, which permitted either the plaintiff or defendant to remove, was repealed by the act of 1887–88,[10] which re-enacted the applicable provision of the act of 1789 restricting the right of removal to the defendant or defendants. In readopting that provision, the Congress naturally readopted the construction which had been put upon it in West v. Aurora City, supra. The same provision with the same construction is now a part of Section 28 of the Judicial Code. That interpretation cannot be lightly put aside without violating well-settled rules of statutory construction.

The general purpose of the act of 1887–88, supra, was to contract federal removal jurisdiction; a special purpose was to take away from plaintiffs the right of removal which had been given to them by the act of 1875, supra. This was clearly evidenced by omitting the words "either party" which had been used in the act of 1875, and employing the words "defendant or defendants therein, being nonresidents of that State." We have, then, this situation: In 1867 the right of removal was limited by statute to non-resident defendants, which statute was held not to include plaintiffs who were also cross-defendants; in 1875 the statute was amended so as to include "either party," which, of course, embraced plaintiffs whether or not they were also cross-defendants; in 1887 the statute was again amended, omitting the use of the words "either party," and making no reference to plaintiffs or cross-defendants, but expressly limiting the right to non-resident defendants. It would not be reasonable to conclude that Congress reenacted the pertinent provision of the law in force in 1867, and rejected the construction which had been put upon that provision by the Supreme Court at that time. If this had been the intention, it might easily have been expressed by adding the words "cross-defendant or cross-defendants."

The cases which refuse to follow West v. Aurora City, supra because it was under a different law do not mention the distinguishing features. If they did, it would be observed that there is no material difference on the point before us, and that whatever changes were made in 1887 were made with a view of contracting federal removal jurisdiction. In Mackay v. Uinta Development Company, 229 U.S. 173, 175, 33 S.Ct. 638, 639, 57 L.Ed. 1138, the Supreme Court found "it unnecessary to consider the status of the parties in the state court, and who was technical plaintiff and who technical defendant, or whether Mackay, a nonresident defendant, sued in a state court for $1,950, could, by filing a counterclaim for $3,000, acquire the right to remove the case to the United States court."

It is argued that a non-resident plaintiff, by going into a state court, does not waive his right to remove to the federal court

10 Act of March 3, 1887, 24 Stat., ch. 373, p. 552; Act of Aug. 13, 1888, 25 Stat., ch. 866, p. 433, 28 U.S.C.A. § 71 note.

when a counterclaim is filed against him. This is not a question of waiver, but of whether or not there was a statutory grant in the first instance; and this is a question of congressional intent. The primary purpose of the act of 1887–88 to cut down jurisdiction was effected by limiting the right of removal to non-resident defendants and by shortening the time allowed to file the petition to remove.[11]

By the Judiciary Act of 1789, the petition to remove was required to be filed by the defendant at the time of entering his appearance in the state court. By the act of 1875, under which either party was entitled to remove, the filing of the petition was permitted at "any time before the trial or final hearing." By the act of 1887–88, which omitted plaintiffs, the petition was required to be filed by the non-resident defendant at or before the time he was required to plead in the state court. These statutory alterations and refinements, reveal no haphazard policy of the Congress; they disclose a definite legislative purpose, at different periods in our history, first of expanding and then of contracting federal removal jurisdiction.[12]

■ Section 28 of the Judicial Code names the persons entitled to remove; section 29, 28 U.S.C.A. § 72, provides how any person entitled to remove may exercise the right. He may file a petition in the state court at or before the time the defendant is required to plead or answer. This provision contemplates the defendant, not the plaintiff, as the party entitled to remove. No time is fixed within which a plaintiff or cross-defendant may petition to remove. In actual practice, the time limit upon filing the petition to remove, designed only for defendants, would generally deny that right to plaintiffs who are made cross-defendants. We should not ascribe to the Congress an implied intention to accord to cross-defendants a right to remove when the statute under consideration contains a procedural provision which shows that the exercise of such right by plaintiffs and cross-defendants was not within the legislative contemplation at the time of the enactment.

The judgment appealed from is reversed, and the cause remanded to the district court with instructions to remand the same to the state court from which it was removed.

---

[11] That the object was to contract jurisdiction has been emphasized in a number of cases. See Smith v. Lyon, 133 U.S. 315, 320, 10 S.Ct. 303, 33 L.Ed. 635; Ex parte Pennsylvania Co., 137 U.S. 451, 454, 11 S.Ct. 141, 34 L.Ed. 738; Fisk v. Henarie, 142 U.S. 459, 467, 12 S.Ct. 207, 35 L.Ed. 1080; Hanrick v. Hanrick, 153 U.S. 192, 197, 14 S.Ct. 835, 38 L.Ed. 685.

[12] See also Act of July 27, 1866, 14 Stat. 306, 28 U.S.C.A. § 71 note; Act of March 2, 1867, 14 Stat. 558. These were special statutes which broadened the jurisdiction, and permitted the petition for removal to be filed at any time before the trial or final hearing of the cause; the act of 1866 permitted only the defendant to remove, but that act was amended by the act of 1867, which extended the right of removal to either plaintiff or defendant in cases of prejudice or local influence.